IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **GEORGE MAROUNTAS** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. 1:25-cv-002048 |
| | ) |
| **BAE SYSTEMS SHARED** | ) |
| **SERVICES, INC.** *et al.* | ) |
| | ) |
|     **Defendants.** | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF COURT'S DIVERSITY
JURISDICTION UNDER THE DOCTRINE OF FRAUDULENT JOINDER**

Defendant BAE Systems Shared Services, Inc. ("BAE"), by counsel, hereby submits this memorandum supporting its claim in the concurrently filed Notice of Removal ("Notice") that this Court has diversity jurisdiction under the doctrine of fraudulent joinder and 28 U.S.C. § 1332.

**INTRODUCTION**

On September 29, 2025, Plaintiff George Marountas, a former employee of BAE, filed his complaint in state court against BAE and Kara Hennigan, an individual employee of BAE who served temporarily as Mr. Marountas's supervisor in the weeks prior to his termination. Mr. Marountas and BAE are diverse parties under 28 U.S.C. § 1332 – Mr. Marountas is a citizen of Virginia, and BAE is a citizen of Delaware and North Carolina.

In Plaintiff's Complaint, he asserts two counts against BAE, claiming that it discriminated against him and retaliated against him when it terminated his employment, in violation of the Virginia Human Rights Act, Va. Code Ann. § 2.2-3900 *et seq.* ("VHRA"). Plaintiff also brings these same two counts against Ms. Hennigan, purportedly aiming to hold her individually liable for discrimination and retaliation under the VHRA. However, it is well-established that individual

supervisors may not be named as defendants under the VHRA. Even more inapt is Plaintiff's third count against Ms. Hennigan, where he asserts that she tortiously interfered with the business expectancy between Plaintiff and his employer, BAE. As Plaintiff well knows, Ms. Hennigan herself is an employee – and indeed an agent – of BAE. Virginia law does not support tortious interference claims alleged in such circumstances because an agent may not interfere with the relationship between the agent's own principal and a third party.

In short, Plaintiff's claims against Ms. Hennigan will undoubtedly fail because they are not supported by the law of this jurisdiction. Given that Ms. Hennigan and Plaintiff are both Virginia citizens, it appears that Plaintiff asserted these meritless claims against Ms. Hennigan to defeat the diversity that is otherwise established between Plaintiff and BAE. Because Plaintiff cannot prevail against Ms. Hennigan, her citizenship should be disregarded with respect to the Court's assessment of diversity jurisdiction in this matter. Therefore, the case is removable to this Court, and the claims against Ms. Hennigan should be dismissed.

## **STANDARD OF REVIEW**

The fraudulent joinder doctrine is an exception to complete diversity that prevents a plaintiff from adding a non-diverse defendant solely for the purpose of defeating federal diversity jurisdiction. *Mayes v. Rapaport.* 198 F.3d 457, 461 (4th Cir. 1999). Under this doctrine, a court may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: (1) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or (2) that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. *Id.* at 464.

"The term fraudulent joinder is, in many ways, a misnomer, as [the doctrine] requires neither fraud nor joinder." *Hien Pham v. Bank of New York*, 856 F. Supp. 2d 804, 808-09 (E.D. Va. 2012) (internal quotations and citation omitted). Rather, it applies both when there has been outright fraud in the plaintiff's pleading of the jurisdictional facts, and where, as here, there is no possibility the plaintiff will be able to establish a claim against that non-diverse defendant. *Id.* at 809. The doctrine is potentially applicable to each defendant named by the plaintiff in the original complaint or any time prior to removal and does not depend on joinder following the filing of the complaint. *Id.* (citing *Mayes*, 198 F.3d at 461 n.8). "The 'no possibility' standard is not to be taken 'literally,' nor is it to be applied 'mechanically.' Instead, the conclusion is properly reached that 'a defendant is fraudulently joined if there is no reasonable basis for predicting that state law might impose liability on the facts involved.'" *Hien Pham*, 856 F. Supp. 2d at 809 (citing *Boss v. Nissan N. Am., Inc.*, 228 Fed. Appx. 331, 335 (4th Cir. 2007) and *Linnin v. Michielsens,* 372 F. Supp. 2d 811, 819 (E.D. Va. 2005)).

## ARGUMENT

**I.     The Court Has Diversity Jurisdiction if Ms. Hennigan is Disregarded for Jurisdictional Purposes.**

BAE is a corporation, and pursuant to 28 U.S.C.§ 1332(c)(1), its citizenship is determined by its state of incorporation and the state where its principal place of business is located. BAE is a Delaware corporation with its principal place of business in North Carolina. Compl. ¶ 2. On the other hand, Plaintiff is a citizen of Virginia. Compl. ¶ 1.

As complete diversity exists between Plaintiff and BAE, and Plaintiff is seeking a judgment of $950,000 (well in excess of the statutory requirement of $75,000), the Court has jurisdiction under 28 U.S.C. §§ 1332 and 1441, if the doctrine of fraudulent joinder applies to Ms. Hennigan and her Virginia citizenship is disregarded.

II. **The Doctrine of Fraudulent Joinder Should Be Applied to Ms. Hennigan.**

In this case, fraudulent joinder applies to permit the Court to take jurisdiction over the dispute between Plaintiff and BAE and to dismiss Ms. Hennigan, the non-diverse defendant, because there is no reasonable basis to conclude that Plaintiff may succeed on any of his claims against Ms. Hennigan, which are barred by Virginia law.

A. **Plaintiff Will Not Succeed on Counts I and II Against Ms. Hennigan Because There is No Individual Liability Under the Virginia Human Rights Act.**

The Virginia Human Rights Act prohibits "employers" from, among other things, discriminating against employees based on a protected characteristic, and retaliating against employees who have opposed practices made unlawful by the statute. Va. Code. Ann. § 2.2-3905(B)(1), (B)(7). Courts have repeatedly held that an individual supervisor or manager is not an "employer" under the VHRA, and therefore that there is <u>no</u> individual liability under the statute. *See, e.g., Edmonds v. McDonald's USA, LLC*, 2025 WL 1066193, at *8 (W.D. Va. Apr. 9, 2025); *Lundberg v. Delta Response Team LLC*, 2024 WL 1676806, at *3-4 (W.D. Va. Apr. 18, 2024); *Saville v. Northwestern Regional Jail Auth.*, 2024 WL 82737, at *8-9 (W.D. Va. Jan. 8, 2024); *see also Arevalo v. Akima LLC/FRS* LLC, 2025 WL 2528947, at *3 (E.D. Va. July 30, 2025) (slip op.) (noting in dicta, "Defendants also argue, <u>correctly</u>, that these claims should be dismissed because individual defendants cannot be held liable under the VHRA.") (emphasis added); .

With respect to claims of discriminatory discharge, the VHRA defines "employer" as "any person employing more than five persons or one or more domestic workers." Va. Code Ann. § 2.20-3905(A). For all other claims under the VHRA, "employer" is defined as "a person employing . . . 15 or more employees . . . and any agent of such a person." *Id.* This second definition (requiring an employer to employ 15 or more employees) parallels the language of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e(a). While plaintiffs in Title VII cases

have attempted to argue that the phrase "and any agent of such a person" could impose individual liability, the Fourth Circuit expressly rejected that argument in declining to find individual liability under Title VII in *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998). And, "[b]ecause claims for discrimination under each of these statutes [Title VII and VHRA] are measured by the same standard, these [VHRA] claims will be reviewed under the Title VII framework." *Morton v. Froehling & Robertson, Inc.*, 786 F. Supp. 3d 965 (E.D. Va. 2025). Indeed, in concluding that the VHRA does not impose individual liability, courts have pointed to parallel language between Title VII and the VHRA, and the overwhelming case law holding that Title VII does not impose individual liability on managers and supervisors. *Lundberg*, 2024 WL 1676806, at *3-4. A contrary interpretation – i.e., one that allows individual liability under the VHRA – would "dramatically expand the scope of the [statute]" in a way that was not intended. *Saville*, 2024 WL 82737, at *8.

Ms. Hennigan is not an "employer" because she does not employ 5 or more individuals, or 15 or more individuals for that matter. As conceded by Plaintiff, she is an employee of BAE who acted as Plaintiff's temporary supervisor prior to his termination. Compl. ¶¶ 41-43. Undersigned counsel has not uncovered a single case where a court has held an individual supervisor such as Ms. Hennigan liable for violations of the VHRA. For this reason, Plaintiff's discrimination and retaliation claims against Ms. Hennigan will undoubtedly fail.

### B. **Plaintiff's Count III for Tortious Interference Must Fail Because Ms. Hennigan, an Agent of BAE, Cannot Interfere with the Relationship between BAE and Plaintiff.**

Mr. Marountas's claim that Ms. Hennigan tortiously interfered with his business relationship with BAE fails as a matter of law because Ms. Hennigan cannot interfere with the relationship between BAE – of which she is an agent – and another party (Plaintiff).

5

Tortious interference "requires interference in a plaintiff's relationship with another, rather than in plaintiff's relationship with the defendant or his principal." *Smith v. Wright*, 2020 WL 6053154, at *13 (E.D. Va. May 6, 2020). It is axiomatic that "[a]n individual cannot interfere in a relationship of which he is a part." *Id.*; *see also Rattner v. Chubb Nat'l Ins. Co.*, 2017 WL 11500149 (E.D. Va. Apr. 24, 2017) ("A person cannot intentionally interfere with his own contract."). Plaintiff has alleged that Ms. Hennigan was BAE's Senior Director-IT Governance and User Experience, and that she was appointed Interim Vice President of IT when Plaintiff's regular supervisor took a leave of absence. Compl. ¶¶ 39-40. Thus, by Plaintiff's own allegations, Ms. Hennigan is an agent of BAE. Where the party interfered with (BAE) and the alleged interferer (Ms. Hennigan) are in a principal-agent relationship, the interferer is not a third party, and no claim for tortious interference can stand. *Smith*, 2020 WL 6053154, at *13.; *see also Koontz v. Jording*, 2019 WL 1339595, at *10 (E.D. Va. Mar. 25, 2019) ("if the employee acts within the scope of [her or] his duties and in furtherance of the employer's wishes, the employee is deemed to be, in effect, an extension of the employer, and cannot be labeled as an interferer or third party").

Plaintiff's only hope is to suggest that Ms. Hennigan was acting outside the scope of her employment in taking the actions that he alleges constituted interference with his business relationship with BAE. *Koontz*, 2019 WL 1339595, at *10; *see also Smith*, 2020 WL 6053154, at *14 ("Under Virginia law, an employee acting within the scope of employment cannot interfere with another employee's business expectancy."); *Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987) (an agent acting within the scope of his employment cannot as a matter of law interfere with his principal's contract). However, tellingly, Plaintiff never alleges that Ms. Hennigan acted outside the scope of her employment, and more importantly, he will be unable to make this showing.

Virginia courts "take a broad view of the employment relationship, and have held that even

6

intentional torts may be within the scope of employment." *Emami v. Bolden*, 175 F. Supp. 3d 616, 620 (E.D. Va. 2016). An agent will be deemed to be acting within the scope of their employment when the action is "something fairly naturally incident to the business" and is done "while the servant was engaged upon the master's business." *Id.* (citing *Sayles v. Piccadilly Cafeterias, Inc.*, 242 Va. 328, 332 (1991)); *see also Gina Chin & Assocs., Inc. v. First Union Bank*, 260 Va. 533, 543 (2000) (the issue is 'whether the service itself, in which the tortious act was done, was within the ordinary course of such business'") (citation omitted). Critically, motivation does <u>not</u> determine scope of employment under Virginia law. *Emami*, 175 F. Supp. 3d at 620 (citing *Gina Chin & Assocs., Inc.*, 260 Va. at 543); *see also Sayles*, 242 Va. at 332 (servant's action falls within scope of employment even if it is mistaken or ill-advised, or if it was based on "some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business"). Applying these standards, courts have routinely dismissed tortious interference claims against individual supervisors under Rule 12(b), with no further discovery needed, where the allegations in the complaint did not demonstrate that the supervisors were acting outside of the scope of their employment. *See, e.g., Smith*, 2020 WL 6053154, at *14-16 (dismissing claims under Rule 12(b)(6)); *Koontz,* 2019 WL 1339595, at *10-12 (dismissing claims under Rule 12(b)(6)); *Emami*, 175 F. Supp. 3d at 619-21 (dismissing claim under Rule 12(b)(1)).

Notably, in *Emami v. Bolden*, this Court dismissed a tortious interference claim and held that a supervisor was acting within the scope of his employment when the allegations asserted that, "for simply personal reasons, [he] wanted to get his subordinate fired and used improper means, perhaps even defamation, to reach that end." *Emami*, 175 F. Supp. 3d at 621. The court went on to explain that "a negative, even deceptive, performance review of a subordinate cannot be considered to lie beyond the scope of an employee who is charged with evaluation and supervision

7

of a subordinate employee." *Id.* Indeed, so long as the individual engages in typical supervisory functions, they will be deemed to act within the scope of their employment even when they violate the employer's policies or have the "malicious" objective of adversely impacting their subordinate's employment. *See, e.g., Smith*, 2020 WL 6053154, at *15 (dismissing tortious interference claim against chief of police who assigned plaintiff duties and made disciplinary determinations, finding that the allegations supported that he acted within the scope of his employment, even if his intent was to remove plaintiff from the department); *Koontz*, 2019 WL 1339595, at *11-12 (dismissing claim against supervisor who allegedly violated internal policies by failing to report workplace incident and then lying to corporate officials, finding allegations supported that he acted within the scope of his employment, which included exercising discretion in reporting incidents and discussing employment matters with the officials). Virginia courts have even found employees who engaged in criminal activity to be acting with the scope of their employment. *See, e.g.*, *Gina Chin & Assocs.*, 260 Va. at 545 (employee participated in criminal scheme to accept forged checks was acting within scope of his employment); *Gulf Underwriters Ins. Co. v. KSI Servs., Inc.*, 416 F. Supp. 2d 417, 423-24 (E.D. Va. 2006) (employee who embezzled funds from employer was acting within scope of her employment because "she could not have committed any of the acts of embezzlement at issue without the facilities and attributes of her office as bookkeeper").

In this case, Plaintiff alleged that Ms. Hennigan, when she was appointed as Interim Vice President, assumed responsibility for administering and monitoring the performance improvement plan (PIP) on which Plaintiff had been placed by his regular supervisor prior to her leave. Compl. ¶ 43. He further alleges that Ms. Hennigan partnered with BAE's Human Resources Partner, Hannah Mozeley, to monitor his progress on the PIP, that Ms. Hennigan and Ms. Mozeley met

8

with him weekly to discuss the PIP and his progress, and that ultimately, Ms. Hennigan terminated his employment. *Id.* ¶¶ 44, 47, 52. Plaintiff claims that Ms. Hennigan expanded the scope of certain performance objectives in the PIP, and, while he asserts the expanded scopes were "unachievable," he does not indicate that Ms. Hennigan did not have the authority to take this action – nor could he, given her role as his temporary supervisor administering the PIP. *Id.* ¶¶ 45-46. And, while Plaintiff asserts his termination occurred prior to the scheduled end of the PIP, he does not assert that Ms. Hennigan lacked the authority to take action before the PIP's end date – again, he could not so allege given the facts as he has depicted them. *See id.* Indeed, any attempt by Plaintiff to argue that Ms. Hennigan acted without authority would be futile because Ms. Hennigan's actions reflect her performance of the ordinary duties and responsibilities of any supervisor monitoring the performance of their subordinate. *See Smith*, 2020 WL 6053154, at *15; *Koontz*, 2019 WL 1339595, at *11-12; *Emami*, 175 F. Supp. 3d at 621.

Plaintiff's only suggestion of "improper" interference is that Ms. Hennigan altered the scope of the PIP and terminated Plaintiff "in order to secure and assume his job position for her own personal benefit." Compl. ¶¶ 76, 79. However, as discussed above, Ms. Hennigan's motivation in expanding the PIP and terminating Plaintiff is irrelevant to the question of the scope of her employment. Even if Ms. Hennigan had acted solely for the purpose of removing Plaintiff so she could assume his job, she would not have acted outside her scope of employment for purposes of stating a claim of tortious interference with the relationship between her own principal (BAE) and Plaintiff. *See* discussion *supra*.

For all the foregoing reasons, Plaintiff will be unable to succeed on his claim against Ms. Hennigan for tortious interference with business relationship.

### III. Under The Doctrine Of Fraudulent Joinder, Ms. Hennigan Should Be Dismissed.

As discussed above, Plaintiff's claims against Ms. Hennigan will undoubtedly fail. Under

9

the doctrine of fraudulent joinder, when the claims against a non-diverse party will not succeed, not only does the case become removable to the federal court, but the court should dismiss the non-diverse defendant and retain jurisdiction over the action. *See Mayes*, 198 F.3d 457 at 461. Because there is no reasonable basis for believing that Plaintiff will be able to hold Ms. Hennigan liable, the Court should dismiss her from this action and retain jurisdiction over Plaintiff and BAE under 28 U.S.C. §§ 1332 and 1441. *See, e.g.*, *Kueilin Lu Tu v. U-Haul Co. of South Carolina, Inc.*, 333 F. Supp. 3d 576, 581-82 (D.S.C. 2018) (finding fraudulent joinder of non-diverse defendant and dismissing defendant from case); *Adkins v. Consolidation Coal Co.*, 856 F. Supp. 2d 817, 825 (S.D. W.Va. 2012) (finding fraudulent joinder of non-diverse defendants and dismissing them from case); *Kings v. Sears Roebuck & Co.*, 2011 WL 672065, at *4 (S.D. W.Va. Feb. 14, 2011) (finding fraudulent joinder of individual defendant in case against individual and employer, where West Virginia law did not allow for individual liability under the statutes at issue, and dismissing non-diverse individual defendant from case).

Dated: November 14, 2025    Respectfully submitted,

      /s/ Christine M. Burke
Christine M. Burke, Va. Bar No. 65741
Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
cburke@islerdare.com
eisler@islerdare.com
mticatch@islerdare.com

*Counsel for Defendants BAE Systems Shared Services, Inc. and Kara Hennigan*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of November 2025, I caused a true and accurate copy of the foregoing to be sent via electronic mail and U.S. mail to the following counsel of record:

>Adam Augustine Carter
>The Employment Law Group, P.C.
>1717 K Street NW, Suite 1110
>Washington, DC  20006
>Tel: 202-856-7802
>Fax: 202-261-2835
>acarter@employmentlawgroup.com

>         /s/ Christine M. Burke
>Christine M. Burke, Va. Bar No. 65741
>IslerDare, P.C.
>1945 Old Gallows Road, Suite 650
>Vienna, VA 22182
>Phone: (703) 748-2690
>Fax: (703) 748-2695
>cburke@islerdare.com