**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **GEORGE MAROUNTAS**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BAE SYSTEMS SHARED SERVICES, INC., *et al.***<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 1:25-cv-02048-RDA-WBP** |

**MEMORANDUM IN SUPPORT OF DEFENDANT BAE SYSTEMS SHARED SERVICES, INC.'S PARTIAL MOTION TO DISMISS**

In his Complaint (Dkt. No. 1-2, pp. 5-16), Plaintiff George Marountas asserts that Defendant BAE Systems Shared Services, Inc. ("BAE") discriminated against him on the basis of his sex and retaliated against him when it terminated his employment approximately six weeks after he was placed on a performance improvement plan. Plaintiff's discrimination claim against BAE (Count I) should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted.

## I. FACTUAL BACKGROUND

The following facts are taken as true solely for purposes of this Motion:

Plaintiff worked for BAE as a cybersecurity professional from August 2020 until his termination in July 2024. Complaint ("Compl.") ¶¶ 8, 10, 52. He initially worked as a Manager II – IT compliance audits, reporting to Judith Phillips, Vice President of Enterprise Shared Services IT ("ESS IT"). *Id.* ¶ 10. Plaintiff alleges that he received several cybersecurity and other business certificates during his tenure with BAE and that he was recognized with certificates of appreciation

from the Company from time to time. *See id.* ¶¶ 12, 14-18, 21-22, 24-27. Plaintiff further alleges that he received high ratings on his performance evaluations in 2021, 2022, and 2023. *See id.* ¶¶ 13, 19, 28.

In January 2022, Plaintiff was promoted to Director I – IT Governance and Compliance Audits. Compl. ¶ 20. He received another promotion in January 2024, after a reorganization of the cybersecurity team, when he applied for and was selected for a new role of Senior Director – IT Governance and Cybersecurity Compliance. *Id.* ¶¶ 29-31. Plaintiff continued to report to Ms. Phillips in this new role; however, soon after his promotion, his supervisor began receiving complaints about his work and that of his team. *Id.* ¶ 32. Plaintiff asserts that BAE delegated more responsibilities to him than were in the position description of his new role, including conducing two major software license audits in March or April 2024. *Id.* ¶ 33. He claims that these audits demanded significant time and limited his ability to focus on other high-priority initiatives. *Id.*

Plaintiff concedes that Ms. Phillips expressed concerns to him about compliance vulnerabilities and passed on to him similar concerns that had been expressed by the Company's Chief Information Officer, Travis Garriss. *Id.* ¶¶ 34-36. However, Plaintiff pushed back on these concerns, stating that he only relayed compliance status information he heard from others, and that his team felt there was no evidence of significant risk. *See id.*

On June 11, 2024, Ms. Phillips sent Plaintiff a draft performance improvement plan ("PIP") with a planned completion date of August 16, 2024. Compl. ¶ 37. Plaintiff alleges that the plan required the employee and manager to agree on a specific set of objectives in order to gauge the employee's improvement, but that he did not participate in setting these objectives. *Id.* ¶ 38. The PIP also called for weekly progress meetings between employee and manager. *Id.* ¶ 39.

Plaintiff alleges that Ms. Phillips took a leave of absence almost immediately after placing him on the PIP. Compl. ¶ 39. At that time, the Company's Chief Information Officer appointed Kara Hennigan, then the Senior Director – IT Governance and User Experience, as Interim Vice President of ESS IT in Ms. Phillips's absence. *Id.* ¶ 40. Until her elevation to this interim role, Ms. Hennigan was a senior director and Plaintiff's peer. *Id.* ¶ 42. Plaintiff alleges that Ms. Hennigan is uncomfortable around her male colleagues and treats female employees more favorably than male employees, but he provides no further details regarding this allegation. *Id.*

As Interim Vice President, Ms. Hennigan assumed responsibility for administering and monitoring Plaintiff's PIP in Ms. Phillips's absence, in coordination with Hannah Mozeley, BAE's Human Resources Business Partner. Compl. ¶¶ 43-44. Plaintiff alleges that Ms. Hennigan expanded the scope of two of the performance objectives outlined in the PIP in a manner that, according to Plaintiff, made them unachievable.[1] *See id.* ¶¶ 45-46. Specifically, he asserts that obtaining the agreement of sector leads, customers, and colleagues before taking action was unachievable because these groups have competing interests. *Id.* ¶ 45. And he further claims that receiving feedback from employees in lower performance quadrants was impossible because he could not be responsible for third parties failing to provide him feedback on his team members. *Id.* ¶ 46. Nevertheless, Plaintiff admits that Ms. Hennigan and Ms. Mozeley met with him each week of the PIP, as required, to discuss his progress, although he asserts that after July 3, he did not receive "written" feedback from them. Compl. ¶¶ 47-48.

Plaintiff claims that sometime in July 2024 he complained to BAE's Vice President of Human Resources, Jessica Prologo, that Ms. Hennigan was treating him unfairly regarding the PIP

[1] Plaintiff does not identify how many objectives were included in the PIP, but there must have been at least five, because he claims that Ms. Hennigan expanded the scope of objective numbers 1 and 5. Compl. ¶¶ 45-46.

and was discriminating against him on the basis of gender. *Id.* ¶ 50. Ms. Prologo allegedly told Plaintiff to raise his concern about Ms. Hennigan with the Chief Information Officer, Mr. Garriss, but Plaintiff claims that Mr. Garriss (or his assistant) cancelled a meeting with Plaintiff after learning the purpose of the conversation. *Id.* ¶ 50. Plaintiff then complained to BAE's Chief Ethics Officer, Kim Kaminski, that he was being treated unfairly and being discriminated against on the basis of gender by Ms. Hennigan. *Id.* ¶ 51. Ms. Kaminski responded to Plaintiff three days later saying that she had investigated the complaint and found no ethics violation. *Id.* ¶ 52.

Finally, Plaintiff asserts that Ms. Hennigan terminated him on July 30, 2024, more than two weeks before the scheduled end of his PIP. Compl. ¶ 52. He claims that BAE selected Ms. Hennigan to replace him as Senior Director – IT Governance and Cybersecurity. *Id.*

Thereafter, Plaintiff filed this lawsuit on September 29, 2025 in the Circuit Court for Arlington County against BAE and Ms. Hennigan. The Complaint included two counts against BAE and three counts against Ms. Hennigan. Plaintiff brought claims of gender discrimination and retaliation against both BAE and Ms. Hennigan under the Virginia Human Rights Act, Va. Code. Ann. § 2.2-3900, *et seq.* ("VHRA"). Compl. ¶¶ 54-71. He also asserted a third count of tortious interference with business relationship against Ms. Hennigan. ¶¶ 72-81. Ms. Hennigan, who was served with the Complaint on October 10, filed a Demurrer as to all three counts brought against her in state court on October 30. Thereafter, BAE removed the action to this Court on the basis of diversity jurisdiction. *See* Notice of Removal, Dkt No. 1.[2] BAE now moves to dismiss

---

2 There is diversity of citizenship between BAE and Plaintiff, but not between Ms. Hennigan and Plaintiff. Compl. ¶¶ 1-3; Notice of Removal ¶¶ 8-11. Removal was appropriate based on the doctrine of fraudulent joinder because Plaintiff cannot succeed on his claims against Ms. Hennigan, the non-diverse defendant. *See* Notice of Removal ¶¶ 12-14; Memorandum in Support of Court's Diversity Jurisdiction (Dkt. No. 2). In accordance with that doctrine, BAE requested that the Court disregard the citizenship of Ms. Hennigan and accept jurisdiction over

the discrimination claim against it on the ground that Plaintiff cannot state a plausible claim for relief that rises above the speculative level.[3]

## II. ARGUMENT

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Graham v. City of Manassas School Bd.*, 390 F. Supp. 3d 702, 708 (E.D. Va. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when the factual content pleaded allows the court to draw the "reasonable inference" that the defendant is liable for the conduct alleged.  *Id.*  A court need not accept as true legal conclusions or unwanted inferences.  *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 837 (E.D. Va. 2022).  To defeat a motion to dismiss, a plaintiff must do more than show a "sheer possibility" that the defendant has acted unlawfully.  *See Graham*, 390 F. Supp. 3d at 708.  Rather, the plaintiff must allege facts sufficient to state a claim that is "plausible on its face" and that raises a right to relief "above the speculative level."  *Rollins v. Kjellstrom & Lee, Inc.*, 109 F. Supp. 3d 869, 873 (E.D. Va. 2015).

---

the dispute under 28 U.S.C. § 1332 because Plaintiff and BAE are diverse parties, and the amount in controversy is greater than $75,000.  *See id.*

[3]     Pursuant to the fraudulent joinder doctrine, in its Notice of Removal, BAE requested that the Court dismiss Ms. Hennigan from the action and retain jurisdiction over the dispute between Plaintiff and BAE.  *See* Notice of Removal ¶ 14.  However, Ms. Hennigan is also contemporaneously filing a motion to dismiss the claims against her in this action because, as discussed in BAE's Memorandum in Support of its Notice of Removal, all three claims against her are unsupported by Virginia law.

**B. Plaintiff's Sex Discrimination Claim Fails To Allege Any Facts Raising an Inference of Discrimination.**

Plaintiff claims that BAE discriminated against him on the basis of sex when it placed him on a PIP, expanded the scope of the PIP to ensure he could not succeed, and then terminated him before the end of his PIP. However, there is absolutely nothing in his Complaint that indicates that any of these actions were based on his gender.

Discrimination claims brought pursuant to the VHRA "are measured by the same standard" as Title VII claims. *Morton v. Froehling & Robertson, Inc.*, 786 F. Supp. 3d 965, 972 (E.D. Va. 2025). Plaintiffs may prove discrimination through direct evidence or through indirect evidence under the well-known *McDonnell Douglas* burden shifting framework. *Ragsdale v. Potter*, 235 F. App'x 173, 174 (4th Cir. 2007). At the motion to dismiss stage, a plaintiff must allege facts that satisfy the elements of a Title VII action. *Martinez v. Constellis, LLC*, 2020 WL 4589194, at *3 (E.D. Va. Aug. 10, 2020) (citing *McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)). The elements of a prima facie case of discrimination under the VHRA are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment than similarly-situated employees outside the protected class or evidence that "the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010); *Jones v. Const. Energy Proj. & Servs. Grp*, 629 F. App'x 466, 468 (4th Cir. 2015).

As an initial matter, Plaintiff has not alleged direct evidence of sex discrimination. Direct evidence is evidence "of conduct or statements that both (1) reflect directly the alleged discriminatory attitude and (2) bear directly on the contested employment decision." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013). Plaintiff's Complaint includes exactly

one allegation in support of his discrimination claim, which is that Ms. Hennigan "is uncomfortable around her male colleagues and treats female BAE employees more favorably than she does male employees." Compl. ¶ 42. This allegation does not directly reflect any alleged discriminatory bias by Ms. Hennigan – it is generic, conclusory, and represents Plaintiff's interpretation of Ms. Hennigan rather than an action she took or statement she made – nor is it related in any way to any adverse action of which he complains. Thus, Plaintiff's Complaint is devoid of facts that could demonstrate discrimination through direct evidence.

Therefore, Plaintiff is left to try to state a claim using the *McDonnell-Douglas* framework. Plaintiff has alleged membership in a protected class (male), but he cannot show the remaining elements of his discrimination claim.

To the extent that Plaintiff challenges his PIP as discriminatory, courts have universally held that a performance improvement plan alone does not constitute an adverse employment action for purposes of an employment discrimination claim. *Melendez v. Bd. of Educ. For Montgomery Co.*, 711 F. App'x 685, 688 (4th Cir. 2017); *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 397 (W.D. Va. 2023) (citing *Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) (unpublished)).[4] Additionally, even if placement on a PIP constituted an adverse action, it was

[4] This principle has not changed following the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). In that case, the Supreme Court held that an adverse employment action "must show some harm respecting an identifiable term or condition of employment," even if that harm need not be significant or serious. *Id.* at 355. While the Fourth Circuit has not directly addressed performance improvement plans following this decision, district courts in this Circuit and district and circuit courts elsewhere have continued to hold that performance improvement plans and negative performance evaluations do not constitute adverse employment actions post-*Muldrow*. *See, e.g., Woods v. Collins*, 150 F.4th 967, 972 (8th Cir. 2025); *Miller v. City of Aurora*, 2025 WL 947908, at *8 (N.D. Ill. Mar. 29, 2025); *Aly v. Yellen*, 2024 WL 2053492, at *5 (D. Md. May 8, 2024).

Ms. Phillips who initially put Plaintiff on the PIP, not Ms. Hennigan, and Plaintiff has not alleged that Ms. Phillips possessed any gender-based bias at all. Thus, any gender discrimination claim premised on Plaintiff's receipt of the PIP must fail as wholly implausible because there are no facts supporting it.

To the extent that Plaintiff attempts to assert that Ms. Hennigan's edits or expansions to the PIP constituted adverse actions, for the same reasons that the PIP itself was not an adverse action, neither can any modifications to the PIP constitute adverse actions, for they did not impose any harm to an identifiable term or condition of employment. *See id.*

Finally, even if the expansions to the PIP constituted adverse actions, and as to Plaintiff's termination (which undoubtedly was an adverse action), Plaintiff cannot succeed on his discrimination claims because (1) he was not performing his job in a satisfactory manner; and (2) he pleads no facts creating a reasonable inference of discrimination. As to his performance, Plaintiff concedes that soon after he was promoted to the Senior Director role in January 2024, his supervisor, Ms. Phillips, began receiving complaints about him and his team. Compl. ¶ 32. He further alleges that both Ms. Phillips and the Chief Information Officer, Travis Garriss, had concerns about IT compliance issues. *Id.* ¶¶ 34-36. Ultimately, Ms. Phillips placed Plaintiff on a PIP due to these performance concerns. *Id.* ¶ 37. While Plaintiff clearly disagrees with the Company's assessment of his performance, in considering whether an employee was meeting his employer's legitimate expectations, it is the perception of the employer which is relevant, not the self-assessment of the plaintiff. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (cleaned up) (other citations omitted). Plaintiff has pleaded himself out of a claim because no reasonable fact-finder could conclude from his own allegations that he was in fact meeting the Company's expectations.

In addition, Mr. Marountas cannot show that his termination was <u>because of</u> his sex. Plaintiff concedes that Ms. Hennigan and BAE's Human Resources Partner met with him weekly to monitor the progress of his PIP and provided him regular feedback, written or otherwise. Compl. ¶¶ 44, 47-48. Critically, he does not allege that his performance improved during this period. *See* Compl. ¶ 48. While Plaintiff claims that he was terminated two weeks prior to the end of his PIP, his termination on July 30 was over six (6) weeks after he was placed on the PIP. *Id.* ¶ 52. In other words, Plaintiff had plenty of time to address the feedback he was receiving and show progress in his performance. That he failed to do so is not representative of sex discrimination. "Terminating an employee for poor performance is not sex-related, and an employer lawfully can rely on poor performance in taking adverse employment action." *Kennedy v. Abbott Laboratories, Inc.*, 654 F. Supp. 3d 512, 521 (E.D.N.C. 2023) (citations omitted).

Plaintiff's discrimination claim relies wholly on the single conclusory allegation that Ms. Hennigan appeared uncomfortable around her male colleagues and treated female employees more favorably than male employees. *Id.* ¶ 34. But Mr. Marountas does not provide any further details of this alleged "discomfort" and does not identify a single instance where a female employee was treated more favorably than a similarly situated male employee. Indeed, Mr. Marountas concedes that he complained about gender discrimination in the administration of the PIP, and that the claim was investigated by BAE's ethics department and found not to be substantiated, further undermining his allegations about Ms. Hennigan and her purported bias. *Id.* ¶ 51.

In the end, Plaintiff's discrimination claim amounts to nothing more than the facts that he and Ms. Hennigan are not of the same gender, and that she terminated him. He relies on speculation alone to prove his claim, without the "factual enhancement" necessary to push his

claim from the merely "possible" to the "plausible." *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007); *see also Coleman*, 626 F.3d at 191 (allegations that plaintiff "was treated differently as a result of his race than whites" and that a white individual was not disciplined for similar conduct failed to state plausible claim for discrimination); *Spellman v. Sch. Bd. of City of Chesapeake, Virginia*, 2018 WL 2085276, at *7 (E.D. Va. Apr. 5, 2018) (generic statement that employee of a different race was treated more favorably than plaintiff insufficient to create reasonable inference of discrimination to survive motion to dismiss); *Cole v. Hillside Fam. of Agencies, Inc.*, 2011 WL 2413928, at *4 (D. Md. June 9, 2011) (conclusory allegations that plaintiff's treatment was based on discrimination and that supervisors "did not treat similar-situated employees in a similar manner" insufficient to state claim for gender discrimination). Accordingly, Plaintiff's discrimination claim fails as a matter of law and should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims for sex discrimination against BAE (Count I) should be dismissed.

Dated: November 21, 2025

Respectfully submitted,

/s/ Christine M. Burke

Christine M. Burke, Va. Bar No. 65741
Eddie Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
cburke@islerdare.com
eisler@islerdare.com
mticatch@islerdare.com

*Counsel for Defendant BAE Systems Shared Services, Inc. and Kara Hennigan*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of November 2025, I caused a true and accurate copy of the foregoing to be sent via electronic mail and the File and Serve mechanism of the court to the following counsel of record:

Adam Augustine Carter
The Employment Law Group, P.C.
1717 K Street NW, Suite 1110
Washington, DC 20006
Tel: 202-856-7802
Fax: 202-261-2835
acarter@employmentlawgroup.com

/s/ Christine M. Burke
Christine M. Burke, Va. Bar No. 65741
ISLERDARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
Phone: (703) 748-2690
Fax: (703) 748-2695
cburke@islerdare.com