**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **GEORGE MAROUNTAS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cv-02048-RDA-WBP** |
| | ) | |
| **BAE SYSTEMS SHARED** | ) | |
| **SERVICES, INC.,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT

**I.    INTRODUCTION**

Defendants BAE Systems Shared Services, Inc. ("BAE" or "Shared Services") and Kara Hennigan, by counsel, hereby oppose Plaintiff George Marountas's Motion to Remand this matter to state court.

As discussed in the Notice of Removal (ECF No. 1) and Memorandum in Support of the Court's Diversity Jurisdiction Under the Doctrine of Fraudulent Joinder (ECF No. 2) ("Removal Memorandum" or "Removal Mem."), Ms. Hennigan's citizenship must be disregarded in assessing this Court's diversity jurisdiction – and she must be dismissed from the case – under the doctrine of fraudulent joinder because there is no reasonable possibility that Plaintiff's claims against her will succeed. Plaintiff's Motion to Remand fails to demonstrate otherwise.

This Court can retain jurisdiction over the dispute between Plaintiff and BAE because they are diverse parties and the amount in controversy is greater than $75,000. Plaintiff's about-face as to BAE's citizenship – in direct contrast to his <u>own</u> <u>allegations</u> in the Complaint, where he asserted that BAE's principal place of business is in North Carolina – is premised on a

misunderstanding of the corporate structure of BAE and its parent company, BAE Systems, Inc. North Carolina is the only possible "nerve center" and principal place of business of Defendant Shared Services, and because its state of incorporation is Delaware, it is diverse from Plaintiff, who is a Virginia resident.

For these reasons, discussed further below, the Motion to Remand should be denied.

## II.    ARGUMENT

### A.    Ms. Hennigan Has Been Fraudulently Joined As A Defendant.

#### 1.    Plaintiff Does Not Articulate The Proper Fraudulent Joinder Standard.

In the Removal Memorandum, BAE argued that Ms. Hennigan was fraudulently joined to this case because there is no possibility that Plaintiff would be able to establish a cause of action against her in state court. In his Motion to Remand, Plaintiff ignores the principle enunciated in the very cases he cites that the "no possibility" standard is not to be applied literally or rigidly. *See Garver v. Holbrook*, 546 F. Supp. 3d 465, 472 (E.D. Va. 2021) (citing *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 818 (E.D. Va. 2005)); *17th Street Associates, LLP v. Markel Intern. Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 595 (E.D. Va. 2005) (same). Rather, courts assessing fraudulent joinder apply a "reasonable possibility" test, asking "whether 'there is a reasonable possibility that a state court would rule against any of' the defendants." *Garver*, 546 F. Supp. 3d at 472 (citing *Beaudoin v. Sites*, 886 F. Supp. 1300, 1302-06 (E.D. Va. 1995)); *see also 17th Street Associates*, 373 F. Supp. 2d at 595 ("The appropriate course, which comports with the purpose of the fraudulent joinder doctrine, as well as the federal remand and removal regime . . . is to ascertain 'whether there is a reasonable basis for predicting liability based on the claims alleged.'") (citing *Linnin*, 372 F. Supp.

3d at 319). Fraudulent joinder is typically found in cases such as this one, where there is no "colorable legal claim under Virginia law." *Garver*, 546 F. Supp. 3d at 473.[1]

Here, as described more fully below, Plaintiff has no reasonable possibility of success against Ms. Hennigan with respect to either his Virginia Human Rights Act (VHRA) claims or his tortious interference claim because neither is "colorable" under Virginia law.

### 2. There Is No Authority Establishing a Reasonable Possibility of Individual Supervisor Liability Under the VHRA.

As discussed in the Removal Memorandum, Virginia courts have overwhelmingly held that there is no individual supervisor liability under the VHRA. *See, e.g., Edmonds v. McDonald's USA, LLC,* 2025 WL 1066193, at *8 (W.D. Va. Apr. 9, 2025); *Lundberg v. Delta Response Team LLC,* 2024 WL 1676806, at *3-4 (W.D. Va. Apr. 18, 2024); *Saville v. Northwestern Regional Jail Auth.,* 2024 WL 82737, at *8-9 (W.D. Va. Jan. 8, 2024); *see also Arevalo v. Akima LLC/FRS LLC,* 2025 WL 2528947, at *3 n.5 (E.D. Va. July 30, 2025) (slip op.). In the face of this mountain of authority, Plaintiff cites no case – state or federal – holding that individual supervisors can be liable under the VHRA. *See* Memorandum in Support of Motion to Remand ("Remand Mem."), at 4-6. And his argument for applying individual liability, in addition to being legally unsupported, is flawed.

---

[1] Notably, in all of the cases on which Plaintiff relies, fraudulent joinder was found. The courts held that the plaintiffs had no reasonable possibility of success against the non-diverse defendants and dismissed those defendants, retaining jurisdiction over the rest of the matter. *See Johnson v. Am. Towers, LLC,* 781 F.3d 693, 704-06 (4th Cir. 2015) (affirming district court's finding that plaintiffs had no viable state law claims against non-diverse defendants and that dismissed non-diverse defendants under fraudulent joinder); *Garver*, 546 F. Supp. 3d at 474-76 (finding fraudulent joinder where Virginia case law showed that non-diverse defendant could not be subject to vicarious liability, and dismissing non-diverse defendant); *17th Street Assocs.*, 373 F. Supp. 2d at 597-601, 606 (dismissing non-diverse defendants under fraudulent joinder because no claims in contract or tort could lie against them under Virginia law).

Plaintiff first takes issue with BAE's reliance on federal cases interpreting the VHRA and argues that the absence of controlling authority from the Virginia Supreme Court is enough to defeat fraudulent joinder. *See* Remand Mem., at 5. That is plainly not true. In *Garver*, a case Plaintiff cites, the court explained that there was "no controlling precedent" on whether plaintiff's theory of liability was sound. 546 F. Supp. 3d at 475. Nevertheless, the court examined Virginia court decisions addressing the issue and determined that they did not accept the plaintiff's theory, leading the court to conclude the plaintiff had no reasonable possibility of success. *See id.* at 475-476.

This Court similarly should examine the Virginia case law addressing the issue of supervisor liability under the VHRA to reach its decision on the possibility of Plaintiff's success on his claims. As noted *supra*, courts ruling on the issue have universally found that there is no supervisor liability.[2] Plaintiff's argument that Virginia appellate courts "have never foreclosed individual liability under the VHRA" (Remand Mem., at 5) asks the Court to do exactly what courts have refused to do, which is to take the "no possibility" standard literally. On the contrary, the line of cases finding repeatedly that there is no individual supervisor liability under the VHRA shows that there is "no reasonable basis for predicting" that the state court would allow such liability against Ms. Hennigan in this case.

---

[2]    The VHRA was amended in 2020 to provide a private right of action against employers with more than 15 employees; previously a right of action existed only for employees of smaller employers, and only for discriminatory discharge. *See Wynne v. Birach*, 2009 WL 3672119, at *2 (E.D. Va. Nov. 3, 2009). Accordingly, there are not many cases arising under the broader version of the statute because only a few years have passed since its expansion, and the requirement to file administrative charges before appearing in court delays the proliferation of these cases even more. Va. Code Ann. §§ 2.2-3907, 3908. However, even cases addressing the issue before the expansion of the VHRA found that the limited private right of action available in the pre-2020 version of the statute did not provide for claims against individual supervisors. *See Walton v. School Bd. of Gloucester County*, 2006 WL 3838235, at *5 (E.D. Va. Dec. 4, 2006).

There is good reason for this consistency in the case law.  As explained in the Removal Memorandum, the VHRA defines "employer" as "a person employing" either five or more persons (for discrimination purposes) or 15 or more employees (for all other claims).  Va. Code Ann. § 2.2-3905(A).  The section of the statute that provides for employer liability states that it is unlawful for "[a]n employer" – <u>not</u> an "individual" – to discriminate on the basis of a protected characteristic or retaliate against an employee who has opposed an unlawful discriminatory practice.  *Id.* § 2.2-3905(B)(1), (B)(7).  Indeed, the language of the VHRA draws directly from that of Title VII of the Civil Rights Act of 1964, for which courts have uniformly found that there is no individual supervisor liability.  *See Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 180-81 (4th Cir. 1998) (no individual supervisor liability under Title VII); *Lundberg,* 2024 WL 1676806, at *3-4 (citing parallel language between Title VII and VHRA in finding no individual supervisor liability under VHRA).

Plaintiff's citation to the enforcement provision of the VHRA, which authorizes a private right of action against "a person," is unavailing.  *See* Va. Code Ann. § 2.2-3908.  The statute refers to actions against "persons" because, in addition to "employers," a plaintiff could bring a claim against an employment agency or a labor organization.  Va. Code Ann. § 2.2-3905(A).  Moreover, Virginia's general definitional statute does not limit "persons" to individual human beings: a person can be an individual, corporation, partnership, association, or any number of other entities.  Va. Code Ann. § 1-230.  The word "person" is used broadly to cover all those potential defendants.  Critically, however, to be a proper defendant as an "employer" under the VHRA, an employer must be a person – individual, corporate, or otherwise – who employs five or more, or 15 or more, employees, as applicable.  Plaintiff does not allege – because he cannot – that Ms. Hennigan

employs this number of individuals.  Accordingly, and as found in every Virginia case that has addressed this issue, Ms. Hennigan is not an "employer" under the VHRA.

Finally, Plaintiff's attempt to rely on cases addressing the tort of wrongful discharge in violation of public policy is misplaced.  *See* Remand Mem., at 5-6.  The Virginia Supreme Court's finding that individual liability is permitted for such torts has absolutely no bearing on Plaintiff's statutory VHRA claims.  Both Virginia and federal courts hold that when a statute is silent on the matter of a right of action, such action should not be inferred unless the Virginia General Assembly (or Congress, as applicable) has demonstrated "palpable" or "compelling" evidence of the intent to create such a right.  *See Planned Parenthood South Atlantic v. Baker*, 941 F.3d 687, 695 (4th Cir. 2019) (citation omitted); *Peabody v. Rector & Visitors of University of Virginia*, 2022 WL 1251318, at *3 (E.D. Va. Apr. 27, 2022) (citing *Cherrie v. Virginia Health Servs., Inc.*, 292 Va. 309, 315-16 (2019)).  Here, as discussed above, the General Assembly provided for liability under the VHRA against "employers," which are defined as persons (individuals or entities) employing a certain number of employees.  Under this clear and plain statutory language, Ms. Hennigan is not an "employer," and no Virginia court should infer a right of action against her where the statute does not expressly allow it.[3]

For all of these reasons, there is no reasonable basis to predict that any state court would allow Plaintiff's VHRA claims against Ms. Hennigan to proceed.

### 3. <u>There Is No Authority Supporting A Reasonable Possibility That Ms. Hennigan Tortiously Interfered with Plaintiff's Business Expectancy.</u>

In the Removal Memorandum, BAE cited numerous cases establishing the following principles: (1) an individual cannot interfere with a contract or business expectancy to which the

---

[3]    Undersigned counsel also has not uncovered any legislative history demonstrating an intent to expand this definition to individual supervisors.

individual is a party, *Smith v. Wright*, 2020 WL 6053154, at *13 (E.D. Va. May 6, 2020); *Rattner v. Chubb Nat'l Ins. Co.*, 2017 WL 11500149, at *3 (E.D. Va. Apr. 24, 2017); (2) accordingly, an agent acting within the scope of their employment cannot tortiously interfere with a contract or business expectancy between the agent's principal and another employee, *Smith*, 2020 WL 6053154, at *13; *Koontz v. Jording*, 2019 WL 1339595, at *10 (E.D. Va. Mar. 25, 2019); *Fox v. Deese*, 234 Va. 412, 427 (1987); and (3) Virginia law broadly interprets "scope of employment," and so long as the agent is doing something "naturally incident" to the employer's business, the agent is not acting outside the scope of employment even if their intentions are selfish or malicious, and even if their actions violate employer policies or break the law, *Emami v. Bolden*, 175 F. Supp. 3d 616, 620 (E.D. Va. 2016); *Gina Chin & Assocs., Inc. v. First Union Bank*, 260 Va. 533, 543 (2000). *See also* Removal Mem., at 6-8.

Applying these principles, Virginia courts have regularly dismissed tortious interference claims brought by employees against their supervisors who were engaged in typical supervisory functions, even when the supervisors had personal motives for taking the actions at issue and/or used improper means to do so. *See, e.g., Emami*, 175 F. Supp. 3d at 619-21 (dismissing tortious interference claim and finding that supervisor was acting within the scope of his employment when, "for simply personal reasons, [he] wanted to get his subordinate fired" and used improper means, including a deceptive and potentially even defamatory performance review, to reach that end); *Smith*, 2020 WL 6053154, at *15 (dismissing tortious interference claim against police chief who assigned plaintiff duties and made disciplinary determinations, finding that he acted within scope of employment even if his intent was to remove plaintiff from department); *Koontz*, 2019 WL 1339595, at *11-12 (dismissing tortious interference claim against supervisor who allegedly violated internal policies by failing to report a workplace incident and lied to corporate officials,

finding that he was acting with scope of employment, which included exercising discretion in reporting incidents and discussing matters with officials).

Based on this precedent, and applying the fraudulent joinder standard of "reasonable possibility," Plaintiff has no reasonable possibility of succeeding on his tortious interference claim against Ms. Hennigan. Plaintiff concedes that Ms. Hennigan, as his interim supervisor, had the authority to administer the Performance Improvement Plan (PIP) which his regular supervisor had previously placed him on, and to terminate his employment. *See* Compl. ¶¶ 45-46. He also concedes that Ms. Hennigan gave him regular feedback about his performance during the PIP period and she managed the PIP in conjunction with BAE's Human Resources department. *Id.* These actions are all consistent with her role as his interim supervisor.

Plaintiff relies on Ms. Hennigan's allegedly modifying the PIP parameters to make them "unattainable" and then terminating him prior to the end of the PIP period, ostensibly so she could assume his role. *See* Compl. ¶¶ 77, 79. But even if true, under Virginia precedent, these actions fall squarely in line with Ms. Hennigan's scope of authority as Plaintiff's supervisor. Plaintiff never alleges that Ms. Hennigan lacked authority to adjust the PIP parameters, nor could he, given that he admits she was his supervisor and administered the PIP. He also does not allege that she lacked authority to terminate him prior to the end of the PIP, nor could he, since he cites no policy that bound her to retain his employment throughout the PIP. And even if Ms. Hennigan violated an employer policy, and even if she did so to achieve her own goal of getting Plaintiff's job, because she had the authority to administer the PIP and terminate Plaintiff, she did not act outside the scope of her employment, regardless of her motives. *See Smith,* 2020 WL 6053154, at *15; *Koontz,* 2019 WL 1339595, at *11-12; *Emami,* 175 F. Supp. 3d at 621.

The cases on which Plaintiff relies fail to establish a reasonable basis to predict that he will succeed on his claim. In *Brackney-Wheelock v. City of Charlottesville*, 652 F. Supp. 3d 603, 620 (W.D. Va. 2023), the court <u>dismissed</u> the plaintiff's tortious interference claims against individual supervisors because the plaintiff had not included any factual allegations supporting the assertion that the supervisors were acting outside the scope of their employment. Furthermore, the court held, as other Virginia courts have similarly held, that "actions solely motivated by spite, ill will and malice" toward the plaintiff do not constitute improper interference. *Id.* at 621; *see also Emami*, 175 F. Supp. 3d at 620 (motivation does not determine the scope of employment under Virginia law); *Sayles v. Piccadilly Cafeterias, Inc.*, 242 Va. 328, 332 (1991) (agent acts within scope of employment so long as action grew out of or was incident to attempt to perform the master's business, even if the action was mistaken or ill-advised). Thus, *Brackney-Wheelock* <u>supports</u> Defendants' arguments against the validity of Plaintiff's tortious interference claim.

As for *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431 (E.D. Va. 2002) and *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246 (W.D. Va. 2001), the courts in those cases found only that the plaintiffs had sufficiently pleaded that their supervisors had acted outside the scope of their employment for purposes of defeating a motion to dismiss. But fraudulent joinder does not require Defendants to show that a claim does not exist at all under Virginia law; Defendants need only show that there is no reasonable possibility that Plaintiff will succeed on his particular claim in this circumstance. *Storey* and *Warner* do not help Plaintiff's argument, as the facts in those cases are wholly distinguishable from those here. In *Storey*, the plaintiff alleged that the individuals at issue were motivated by an intent to protect themselves from liability and that they lied and schemed to terminate plaintiff's employment in violation of his employment contract. 207 F. Supp. 2d at 447-449. And in *Warner*, the plaintiff alleged that the supervisor used "fraud

9

and defamation" to interfere with the plaintiff's employment. 149 F. Supp. 2d at 266. As an initial matter, these cases were decided before the line of cases cited in the Removal Memorandum and *supra*, and they do not align with current Virginia law, which would dictate that use of defamation, fraud, and similar tactics are not sufficient to take a supervisor's actions outside the scope of employment. But even under these holdings, Plaintiff has not alleged any facts that come close to those in *Storey* and *Warner*. Plaintiff does not allege that Ms. Hennigan engaged in defamation, fraud, a scheme to protect herself from liability, or anything similar to the conduct at issue in those cases. Ms. Hennigan's alleged conduct is far more similar to that of the defendants in *Emami* and *Smith*, where the court found that supervisors providing performance reviews and issuing discipline were acting within the scope of their employment, even if their motives were to remove the plaintiffs for personal reasons. *See Emami*, 175 F. Supp. 3d at 619-21; *Smith*, 2020 WL 6051354, at *15.

There is, therefore, no reasonable possibility that Plaintiff will succeed on his tortious interference claim against Ms. Hennigan. Because Plaintiff also has no reasonable possibility of succeeding on his VHRA claims against Ms. Hennigan, Defendants have established fraudulent joinder, and Ms. Hennigan must be dismissed from the action.

## B. **BAE and Plaintiff Are Diverse Parties.**

Once Ms. Hennigan is dismissed from the action, the Court can retain jurisdiction over the dispute between BAE and Plaintiff because they are diverse parties. There is no dispute that the amount in controversy exceeds $75,000, that Plaintiff is a Virginia resident, and that BAE is incorporated in Delaware. *See* Compl. ¶¶ 1-2, page 12 (Ad Damnum Clause); Notice of Removal ¶¶ 6, 8-10. Plaintiff alleged in his Complaint that BAE's principal place of business ("PPB") is North Carolina and further stated that BAE's "headquarters" is in Charlotte, North Carolina.

Compl. ¶¶ 2, 44.  His last-ditch effort to argue now that BAE's PPB is in Virginia fails because it misrepresents BAE's corporate structure, operations, and leadership.

Defendant Shared Services is one of several wholly-owned subsidiaries of BAE Systems, Inc. (hereinafter "Inc."). Inc. serves as the head corporation of the BAE Systems family in the United States. *See* Financial Disclosure Statement (ECF No. 4); Declaration of Kenneth Wilcox, attached hereto as Exhibit 1 ("Wilcox Decl.") ¶ 3. Inc.'s principal place of business is Falls Church, Virginia, and because the most senior executives of Inc. work there, it is identified as the "Head Office" on the website. *See* Remand Mem., at 3; Wilcox Decl. ¶ 3. However, relatively speaking, few employees of the BAE family work for Inc. Wilcox Decl. ¶ 4. The company has four large business sectors that perform its operations: Electronic Systems, Platforms & Services, Intelligence & Security, and Space and Mission Systems. *Id.* Each of these sectors consists of a collection of separate corporate entities, and each is wholly owned by Inc. *Id.* The business of Shared Services, yet another subsidiary, is to provide administrative support to all of the company's U.S. businesses, so that Inc. and each of the sectors do not need to have their own respective administrative personnel and structures in place to perform these functions. *Id.* ¶ 8. Thus, Shared Services, as a separate corporate entity from Inc. and the other sectors, provides information technology, certain administrative human resources services (such as information collection and record-keeping), and certain financial functions – most notably payroll – to Inc., Electronic Services, Platforms & Services, Intelligence & Security, and Space and Mission Systems. *Id.* Shared Services is paid by these entities for the services it provides them. *Id.*

Shared Services has only one physical location devoted to its business and that houses exclusively Shared Services employees, known as the "Resource Center," which is in Charlotte, North Carolina. Wilcox Decl. ¶ 5. Shared Services has always held itself out as being

headquartered and having its principal place of business at the address of the Resource Center. *Id.* Shared Services has approximately 1,375 employees, of which 91 work at the Resource Center, a 37,800-square foot facility in Charlotte. *Id.* The other employees of Shared Services work around the country. *Id.* ¶¶ 5-7. A few, like Plaintiff and Ms. Hennigan, work out of the Falls Church, Virginia office of Inc., and others work from other Inc. or sector offices nationwide. *Id.* ¶ 7. Just over 1,000 Shared Services employees work remotely from their homes. *Id.* ¶¶ 6-7. The largest single group of Shared Services employees is located in North Carolina, at the Resource Center. *Id.* ¶ 5.

Shared Services does not have its own president or other singular leader. Wilcox Decl. ¶ 9. However, the leaders of most of the functions that Shared Services provides are Shared Services employees assigned to the North Carolina location. *Id.* Thus, the Acting Chief Information Officer for all of the BAE companies is a Shared Services employee whose job is assigned to North Carolina (although he works much of the time from his home in Connecticut). *Id.* ¶¶ 2, 5. In addition, other senior IT leaders, including the Vice President of IT and Infrastructure and the Vice President of Information Security, are both Shared Services employees assigned to North Carolina (although one works from home in Minnesota and one works from home in Virginia). *Id.* ¶ 9.[4] The leader of the Human Resources administrative functions that Shared Services provides to the BAE family of companies is a Shared Services employee assigned to the North Carolina office (although she works from her home in Florida). *Id.* ¶ 10. Finally, the Director of Payroll for the entire family of BAE companies is a Shared Services employee whose job is assigned to North

---

[4]     Inc. is actively searching for a full-time CIO, and the new individual in this role will be an Inc. employee assigned to Falls Church, just as several other chief employees for the parent company are assigned there. Wilcox Decl. ¶¶ 9, 13. But the other Vice Presidents mentioned above will remain Shared Services employees assigned to North Carolina.

Carolina (although she works from her home in Georgia).  *Id.* ¶ 11.  These Vice Presidents and Directors of HR, IT, and Payroll are the leaders who direct the work of the employees of Shared Services, and all of their jobs are assigned to North Carolina; while all of them work from home, only one works in Virginia, while the others are in states across the east coast.  *Id.* ¶ 12.

Plaintiff's citation to the "nerve center" test set forth in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) does not require this Court to ignore the fact that Inc. and Shared Services are two distinct corporate entities with distinct functions and missions.  *Hertz* did not address the question of the "nerve center" in the context of parent and subsidiary corporations.  But after *Hertz*, courts have continued to hold that the citizenship of a parent company does not automatically apply to its subsidiaries, and vice versa.  Indeed, courts have noted that even when there is some control of a subsidiary by its parent – as in nearly all parent-subsidiary relationships – so long as corporate formalities are maintained, that normal amount of control does not render the two a single enterprise such that the citizenship of one becomes the citizenship of the other.  *See Elite Integrated Medical, LLC v. New World Communications of Atlanta, Inc.*, 2021 WL 1663444, at *3 (N.D. Ga. Apr. 28, 2021) ("Courts should be hesitant to disregard 'distinctions among the various corporate entities that often comprise large business enterprises' such that the 'brain' of every related subsidiary corporation is that of the parent.") (citing *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 357 n.23 (3d Cir. 2013)); *Astra Oil Trading NV v. Petrobras America Inc.*, 2010 WL 3069793, at *8 (S.D. Tex. Aug. 4, 2010) ("'[W]here the corporate separation between a parent and subsidiary, though perhaps merely formal, is real and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through ownership or otherwise.'") (citing *Topp v. CompAir Inc.*, 814 F.2d 830, 837 (1st Cir. 1987)); *see also Stoecklin v. Universal Property &*

*Casualty Ins. Co.*, 2010 WL 11623558, at *2 (M.D. Fla. Feb. 17, 2010) (citizenship of wholly owned subsidiary cannot be imputed to parent corporation for purposes of diversity jurisdiction absent a showing that the companies have not preserved their separate corporate identities); *Litton Loan Servicing LP v. Texas Realty Holdings, LLC*, 2009 WL 10694813, at *4-5 (S.D. Tex. Jan. 22, 2009) (courts must not use the alter ego doctrine to ignore the place of citizenship of subsidiary and treat subsidiary as if it is a citizen of the state of incorporation of the parent).

Plaintiff fails to recognize the distinctions between Inc., Shared Services, and other corporate entities in the BAE family when arguing that Falls Church, Virginia is the PPB of Shared Services. Notably, <u>none</u> of the job titles that he identifies as "leaders" of the company based in Virginia are Shared Services employees. *See* Remand Mem., at 3. The Chief Executive Officer, Chief Human Resources Officer, Senior Vice President of Finance, and Chief Supply Chain Officer are all Inc. employees. Wilcox Decl. ¶ 13. These executives have overall responsibility for their respective areas as to the entirety of BAE company operations in the United States, as the executives of any parent company would, but they do not specifically direct the operations of Shared Services. *Id.* As for the other titles he mentions, the President of Platforms & Services is an employee of BAE Systems Land & Armaments LP (one of the corporate entities that makes up that sector); and the President of Intelligence & Security is an employee of BAE Systems Technology Solutions & Services, Inc (one of the corporate entities that makes up that sector). *Id.* These leaders direct those corporate entities but have no involvement in the work of Shared Services. *Id.*

Thus, Virginia may be the "nerve center" of BAE Systems, Inc., but North Carolina is the "nerve center" of Shared Services. As discussed above, the leaders of the functions that Shared Services provides are largely Shared Services employees assigned to North Carolina. While the

14

chief officers of various functions (including HR and finance) for the full BAE family may be Inc. employees based in Virginia, this represents the typical amount of "control" that a parent has over all its subsidiaries and is not determinative.  *See Elite Integrated Medical*, 2021 WL 1663444, at *3; *Astra Oil Trading*, 2010 WL 3069793, at *8.  Rather, the focus must be on the leaders of the business of the entity that is a defendant in this case, which is Shared Services.  *See Elite Integrated Medical*, 2021 WL 1663444, at *3 ("in determining a corporation's principal place of business, [the] inquiry must focus *solely* on the business activities of the corporation whose principal place of business is at issue") (citing *Tabert Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 62-63 (1ˢᵗ Cir. 1992)); *see also Colmenares v. Paedae, Inc.*, 2021 WL 4934976, at *4 (C.D. Cal. Oct. 22, 2021) (focusing on the location of highest-ranking officials of the corporate defendant at issue). Those leaders are assigned to North Carolina, and while all work from home in different states, only one is in Virginia.  And, there is no other location where there are more Shared Services employees or more leaders of the functions that Shared Services performs than in North Carolina. *See Colmenares*, 2021 WL 4934976, at *4 (finding company's principal place of business was Ohio where three of the nine highest-ranking officers of the company worked there, making it home to a plurality of its officers, and where it was the only single place home to more than one officer); *Astra Oil Trading*, 2010 WL 3069793, at *8 (finding that principal place of business of subsidiary was not state where parent had principal place of business, but state where head of subsidiary business led the organization); *DeLuca v. Allstate New Jersey Ins. Co.*, 2011 WL 3794229, at *4-5 (D.N.J. Aug. 25, 2011) (finding that subsidiary's principal place of business was New Jersey, and not Illinois (where parent company was located), because subsidiary's primary location was in New Jersey and head of subsidiary directed its operations from there).

Plaintiff's argument that undersigned counsel represented that Shared Services was headquartered in Falls Church, Virginia, is both invalid and disingenuous.  *See* Remand Mem., at 3-4.  Prior to Defendants' decision to remove the case, undersigned counsel informed Plaintiff's counsel that Plaintiff had chosen the wrong <u>venue</u> when filing in Arlington County Circuit Court. *See* Motion to Remand, Ex. B (raising the issue of "venue" and not mentioning any company's "headquarters").  This is because Plaintiff and Ms. Hennigan both worked at the Inc. building in Falls Church, which is located in Fairfax County, not Arlington County.  *See* Compl. ¶¶ 2, 7, 41. Since Plaintiff alleged venue based on the location of his employment – i.e., where the events outlined in the Complaint took place (Compl. ¶ 7; Va. Code Ann. § 8.02-262(4)) – were this case to be litigated in state court, the appropriate venue would be Fairfax County.  But the location of Plaintiff's work has no bearing on the citizenship of Shared Services, which is determined only by the state of its incorporation and the state of its principal place of business.

"[E]very corporation has a principal place of business, and has only one of them." *Colmenares*, 2021 WL 4934976, at *4.  In this case, Plaintiff attempts to blur the lines between Inc. and Shared Services in order to argue that Shared Services' PPB is in Virginia, where Inc.'s PPB is located.  But this effort is unfounded and misguided because Inc. and Shared Services are separate corporations with distinct functions.  The business of Shared Services is the provision of a few distinct administrative services to the BAE family of companies, and the leaders of those services are overwhelmingly assigned to Shared Services' North Carolina location.  While they may work from home in other states, there is no other single state where they all work from home. Finally, there is only one physical location of Shared Services: in North Carolina.  This location is not simply a mailbox or a single office with one desk; it is a large facility that houses nearly 100 employees, and it is the only facility that houses exclusively Shared Services employees, and the

16

place where the largest single mass of Shared Services employees works.  Plaintiff, notably, alleged in his own Complaint that Shared Services' PPB and "headquarters" were in North Carolina.

For all these reasons, the PPB of Shared Services – its "nerve center" – is North Carolina.  With its PPB in North Carolina and its incorporation in Delaware, Shared Services is diverse from Plaintiff, a Virginia resident.

## III.   **CONCLUSION**

Plaintiff and Shared Services are diverse parties, and the amount in controversy exceeds $75,000.  While Plaintiff and Ms. Henningan are not diverse, Ms. Hennigan should be dismissed under the doctrine of fraudulent joinder because Plaintiff has no reasonable possibility of success on his claims against her.  After dismissing Ms. Hennigan from this lawsuit, the Court can retain jurisdiction over the dispute between Shared Services and Plaintiff.  The Motion to Remand should be denied.


Dated: January 12, 2026                Respectfully submitted,


            /s/ Christine M. Burke
Christine M. Burke, Va. Bar No. 65741
Eddie Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
cburke@islerdare.com
eisler@islerdare.com
mticatch@islerdare.com

*Counsel for Defendant BAE Systems Shared Services, Inc. and Kara Hennigan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of January, 2026, I caused a true and accurate copy of the foregoing to be filed with Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

R. Scott Oswald
Adam Augustine Carter
The Employment Law Group, P.C.
1717 K Street NW, Suite 1110
Washington, DC 20006
Tel: 202-261-2803
Fax: 202-261-2835
soswald@employmentlawgroup.com
acarter@employmentlawgroup.com

_____/s/ Christine M. Burke_____
Christine M. Burke, Va. Bar No. 65741
ISLERDARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
Phone: (703) 748-2690
Fax: (703) 748-2695
cburke@islerdare.com

18